**CARNEY v. AGURS.**

No. 6077.

Court of Appeal of Louisiana. Second Circuit.

April 4, 1940.

Rehearing Denied May 3, 1940.

Writ of Certiorari and Review Denied July 18, 1940.

A. A. LeRosen, of Shreveport, for appellant.

James G. Palmer, of Shreveport, for appellee.

HAMITER, Judge.

The disagreement forming the basis of this litigation is the outgrowth of dairy operations conducted by plaintiff and defendant.

On the 19th day of March, 1934, the parties litigant entered into a written agreement which provided that during the year 1934 the farm belonging to defendant, James M. Agurs, and located about 12 miles from Shreveport on the Greenwood Road, should be managed and occupied by plaintiff, H. G. Carney, "under a contract of employment based on a share of the profits to be realized from the operation of said farm and the said dairy situated thereon."

It further recited that plaintiff would furnish and stand the expenses of all necessary labor; that the milk produced from the herd of approximately 40 cows would be sold from day to day and the proceeds therefrom used in purchasing supplies for the farm and dairy; and that "the profits made under this contract of employment" would be divided by the parties after the marketing of the crops of cotton and other farm products.

Another provision was that "this contract shall be in force until after the crops are gathered and not later than December 1st, in any case, and if either party desires to terminate this contract he is to give ten days' notice to the other party of his said intention, but a new contract shall be entered into if the contract is desired to be renewed by the parties."

The litigants operated the farm and dairy pursuant to the mentioned written recitations, and reached a settlement on October 1, 1934. The farming activities proved to be unprofitable.

Commencing on or shortly after the last mentioned date and continuing until September 5, 1938, they engaged exclusively in the dairy business, and operated without any written contract. Defendant furnished the required lands, buildings and cattle, while plaintiff provided the necessary labor, except as hereinafter mentioned, and cared for the production and marketing of the milk. On the first of each month during that period, the parties effected a settlement of the preceding month's business by first deducting the cost of the feed and other supplies from the gross receipts and then sharing equally in the net profits. Defendant contributed towards plaintiff's labor expense from about January 1, 1935, until March 31, 1938, to the extent of $15 per month.

In July, 1936, a cooling system was purchased by defendant, at a cost to himself of $700, while plaintiff bought, with his own funds, a motor truck. They made those purchases in the interest of the dairying business pursuant to a previously reached understanding.

Defendant, on September 5, 1938, sold all of his cattle to one John Roberts, thus ending their dairy operations. The premises were not then vacated by plaintiff, however, he having occupied one of the houses thereof until the latter part of the following December.

Plaintiff, in his petition in this suit, alleges that on or about January 1, 1935, he entered into a verbal contract with defendant for the year 1935, under which he leased the above mentioned farm, together with all improvements, cows and dairy equipment thereon, and was to have complete control and management of said properties and was to market all the products of said dairy; that "he was to buy all the feed, as well as all other things necessary for the operations of said business, and to do all the work necessary in connection therewith, except defendant each month was to pay petitioner in cash, to apply on the labor bills incurred in the employment of the necessary help in operating said dairy, the sum of Fifteen Dollars, and that at the end of each month the feed bill, as well as the bills for any other items of expense due to be paid by the said business, incurred during the preceding month, was to be first paid and deducted from the gross receipts of said business and then the balance left, or in other words, the net profit for the month, was to be divided equally between petitioner and defendant, which said division of the said net profits, constituted the consideration petitioner paid, and was due to pay, defendant for the said lease;" and that for the year 1935 the said agreement was carried out to the advantage of both parties.

It is further alleged that on or about January 1, 1936, he and defendant entered into a new agreement, covering the year 1936, to operate the dairy upon the same terms and conditions governing the previous year, with the exception that the purchasing of the aforementioned motor truck and cooling system was provided for.

On or about the first day of the years 1937 and 1938, according to the petition's additional allegations, the parties entered into new agreements covering the same properties for those respective years, based upon the same terms and conditions of the 1936 contract.

It is also averred by plaintiff that defendant's sale of the dairy cattle to John Roberts on September 5, 1938, constituted a breach of their contract and damaged him in the amount of the profits he would have made had he been permitted to continue the operation of said dairy throughout the remainder of the year 1938; and that on April 1, 1938, and thereafter defendant also violated the contract by refusing to pay the said $15 per month on the labor bill.

The prayer of plaintiff is for judgment against defendant in the sum of $947.65, which is the total of the following itemized amounts:

1. One-half of the net profits of the operation of said dairy, September 1 to 5, inclusive, 1938... $ 57.11

2. One-half the net profits that would have been earned by the operations of said dairy, from September 5, 1938, to January 1, 1939, based on the average monthly profits of that year prior thereto, of which petitioner was denied on account of the breach by defendant of the said contract in making the said sale of the said dairy and equipment ...................... $793.89

3. Five months' pay to laborers, at $15.00 per month, which defendant had previously paid, and which he later declined to pay, beginning April 1, 1938, and covering the months of April, May, June, July and August......... $ 75.00

4. For milk cans bought and paid for by petitioner, and for which defendant agreed to pay........ $ 10.00

5. One-half of the premium paid by petitioner on liability policy on the truck, after crediting the full amount with refund.......... $ 11.65

Defendant, in his answer, denies the material allegations of the petition and all indebtedness to plaintiff, except the claim of $57.11, being for one-half of the net profits of the dairy operations from September 1 to 5, 1938, inclusive, which is admitted. Affirmatively, he sets forth that at the expiration of the above described written contract for the year 1934, he employed plaintiff from month to month only and "it was agreed between them that if at any time the said defendant should be able to advantageously dispose of the dairy, the cattle, or the equipment or any part of same that he had the right to do so and the contract of employment would be immediately terminated."

In reconvention, defendant avers plaintiff's unauthorized occupancy of a five-room house on the premises subsequent to September 5, 1938, and that such has prevented a leasing of the farm and improvements thereon and resulted in loss and injury to him.

Defendant prays for a rejection of plaintiff's demands, and that he have judgment in reconvention for $500 as damages for wrongfully preventing said leasing, and additionally for $50 per month as rentals from September 5, 1938, until the house is vacated.

The district court, after a trial on the merits, rendered judgment in plaintiff's favor for $171.33, and in favor of defendant in reconvention for $70; and condemned defendant to pay all costs incurred in the suit.

Defendant appealed from the judgment. The appeal has been answered by plaintiff who asks that "the said judgment of the district court be amended by increasing the amount of plaintiff's award herein against defendant, appellant, to the full amount sued for in principal, interest and costs, and that the said judgment be further amended by rejecting the demands of defendant, appellant, in full."

No written opinion in the case was rendered by the trial judge. We are informed, however, by plaintiff's counsel in the brief, that he "held that the contract between plaintiff and defendant was subject to be terminated by giving 10 days' notice, basing that view on the written contract for 1934, which did have a stipulation to that effect, and that since such notice was not given, plaintiff was entitled to judgment, not only for the $57.11 admitted by defendant to be due him for his part of the earnings from September 1st to and through September 5th, but a further judgment at the same rate of income for the 10 days following September 5th. That is to say, the lower court awarded plaintiff judgment in the sum of $171.33, with the legal rate of interest from

September 15th, 1938, and awarded defendant, on his reconventional demand, judgment in the sum of $70.00 at the legal rate of interest from the alleged due date, fixing rental due by plaintiff for use of the house he occupied at $20.00 per month, from September 15th through January 31st." Defense counsel's appreciation of the holding is substantially the same, according to the provisions of his brief.

Our first duty, in passing on this litigation, is to determine the relationship that existed between the parties during the year 1938, and particularly on September 5, 1938, when their dairying operations were abruptly terminated through the sale by defendant of all of the cows. As before shown, it is the position of plaintiff that they were operating under a verbal contract covering the entire year of 1938, while defendant claims that their arrangements were for no definite period of time and that he possessed the right to dispose of the business whenever he saw fit.

■ Counsel for plaintiff first argues, in support of the contended year's contract, that the farm constituting the base of the dairy operations was a predial estate; that according to Civil Code, article 2687, the lease of a predial estate, when time has not been specified, is presumed to be for one year; and that defendant has not discharged the burden which he carries of proving the asserted shorter term. If the term "predial estate" correctly characterizes the properties in question, with reference to which we express no opinion, we think that the presumption created by the mentioned codal provision has been clearly rebutted or overcome by the evidence in the record and hereinafter discussed.

It is next said by plaintiff's counsel that the testimony, with all the attending circumstances, preponderates in favor of the conclusion that the contract was by the year. With this we are unable to agree.

As above shown, the described written contract of 1934 pertained to both farming and dairying and was terminated October 1, 1934. It did not in any manner affect the subsequent operations. After its expiration no agreement of the parties was ever reduced to writing and their activities related only and exclusively to dairying.

Plaintiff testifies that about the first of January, 1935, he met defendant in front of the Dairyland Creamery in Shreveport, and while standing next to his milk truck, the two agreed verbally that for the year 1935 plaintiff would operate the dairy and produce the milk while defendant would furnish the cows and pay $15 a month toward the labor; and that at the end of each month of that year the net profits would be divided. The testimony of Mrs. Carney, who claims to have been seated in the truck at the time and overheard the conversation, is corroborative of plaintiff's described version. It is further stated by plaintiff that at the beginning of each of the years 1936, 1937 and 1938, he had the following conversation with defendant: "I said to him, 'How about it, Mr. Jim, are you ready for us to keep going?' He said, 'Yes, we will keep on going as we have been going.' I said, 'Okay.'"

Defendant emphatically denies the making of an agreement with plaintiff on or about January 1, 1935, at the Dairyland creamery. He says that on October 1, 1934, when they had the settlement for the year 1934, plaintiff requested the privilege of milking the cows and selling the milk until a job could be obtained or the cattle were sold. This request was granted, so defendant testifies, with the understanding that plaintiff was to get one-half of the net profits of the milk sales as his salary. "That was Mr. Carney's wages until he could get a job."

Monthly settlements between the parties occurred regularly after October, 1934, as before stated. These were effected at the home of defendant, and on each occasion, as the evidence conclusively shows, he gave to plaintiff a check for half of the net proceeds then due with a notation thereon, "Settlement in full to date."

In the month of May, 1935, plaintiff unsuccessfully applied to one J. M. Wynn for employment. When asked at the time if he was not engaged with the defendant Agurs, he replied that "he was not tied up with anybody."

■ The testimony of defendant, the above discussed month to month settlements, the application for work made to J. M. Wynn, and other circumstances disclosed by the record, combine to show convincingly that no year's contract was in existence when defendant sold the cattle on September 5, 1938. It is our opinion, however, formed from a consideration of all of the evidence, that on October 1, 1934, defendant engaged plaintiff as an employee to work on a monthly basis, and that this

relationship continued by means of reconduction from month to month thereafter.

Undoubtedly, defendant was privileged to dispose of his cows; but their sale was subject to the existing employment relationship and could not be made with prejudice to plaintiff's rights to wages for any month that had begun to run. We think, therefore, that plaintiff is entitled to remuneration for the entire month of September, 1938, or, in other words, the wages that he would have earned during that month had the termination not occurred on September 5th. The amount thereof is fixed at $212.75, this being his average monthly net profit computed over a long period of time, as disclosed by the evidence, and includes the above mentioned item of $57.11. He is not entitled to any damages for the remaining months of that year.

■ Plaintiff's claim for five months' pay to laborers at $15 per month, or a total of $75, was, in our opinion, properly disallowed. Although defendant made numerous monthly contributions toward the labor expenses, it is not clearly shown that there existed a definite agreement binding him to contribute for any fixed period of time.

■ The items of $10 for milk cans and $11.65 for insurance premiums, listed in the petition and for which judgment is asked, are not supported, as the trial judge held, by a preponderance of the evidence.

■ Considering now the reconventional demand, the item of $500, claimed as damages for wrongfully preventing the leasing of the properties, is not proved. As to the claim relating to plaintiff's occupancy of the house on the premises, the district judge allowed and fixed a rental of $20 per month from September 15, 1938, through December 31, 1938, a period of three and one-half months. The mentioned monthly rate appears to be correct under the evidence adduced; however, in view of our above holding, plaintiff was entitled to use the house until September 30, and he is chargeable with rent only from October 1, 1938.

■ An appellate court is granted the right by Act 229 of 1910, § 2, to tax the costs against any party to the suit, as in its judgment may be deemed equitable. Neither party to this controversy is without fault, and we think that each should pay one-half of the entire costs. Coussons v. Smythe, La.App., 178 So. 657; Perkins v.

Louisiana Land & Exploration Co., 171 La. 913, 132 So. 499.

Accordingly, the judgment appealed from is amended by increasing the amount awarded plaintiff from $171.33 to $212.75, with five per cent per annum interest thereon from judicial demand; and by reducing the amount awarded defendant from $70 to $60, with five per cent per annum interest thereon from judicial demand. In all other respects, except as to costs, the judgment is affirmed. The costs of both courts shall be borne in equal portions by plaintiff and defendant.